## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| **v.** ) | **Case No. 21-cr-00378-TJK** |
| ) | |
| **KEVIN TUCK** ) | |
| ) | |
| ) | |
| **Defendant** ) | |
| ) | |

## DEFENDANT KEVIN TUCK'S SENTENCING STATEMENT

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

I.  Introduction

Comes now Defendant Kevin Tuck by and through his undersigned counsel of record, William L. Shipley Esq., and submits to this Court his Sentencing Statement in advance of the Sentencing Hearing on January 8, 2025.

Mr. Tuck appears for sentencing before this Court having pled guilty to Count Two of the Indictment, charging him with a violation of 18 U.S.C. Sec. 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds.

As to the violation of 18 U.S.C. Sec. 1752(a)(2), Mr. Tuck faces a statutory maximum penalty of up to 12 months imprisonment and a fine up to $100,000.

The Probation Officer has recommended a sentence of 60 days in custody, followed by one year of supervised release.

II.  Sentencing Guidelines Calculation

The parties entered into a written Plea Agreement wherein they agreed upon the Sentencing Guideline calculation that would apply in this case. The PSR has adopted this same calculation.

Count Two:  18 U.S.C. Section 1752(a)(2)

| | |
|---|---|
| **Base Offense Level:** | **4** |
| Specific Offense Characteristics: | +2 |
| Victim Related Adjustment: | 0 |
| Adjustment for Role in the Offense: | 0 |
| Adjustment for Obstruction of Justice: | 0 |
| Adjusted Offense Level **(Subtotal):** | **6** |
| Acceptance of Responsibility: | -2 |

Chapter Four Adjustment:                                                              0

**Total Offense Level:                                                               4**

Based on an offense level of 4, and a criminal history score of 0, the Recommended Guideline Range is 0-6 months.

Mr. Tuck is also entitled to a further -2 reduction as a "Zero Point Offender" under U.S.S.G. Sec. 4C1.1, as he has no criminal history points and the offense of conviction is not a crime of violence. The Probation Officer does not recommend this reduction, but if that reduction is applied Mr. Tuck's Total Offense Level should be 2. The recommended Guideline range would remain at 0-6 months.

   III.   The Offense Conduct.

The parties entered into an agreed upon "Statement of Offense" as part of the plea agreement. The Probation Officer has accurately set forth the relevant facts in the Presentence Report.

   IV.   Sentencing Factors Under Sec. 3553(a)

Pursuant to 18 U.S.C. § 3553(a), several factors are to be considered by the Court in formulating an appropriate sentence in this case.

The facts of this case, including the facts of the offense and factual circumstances pertinent to the Defendant's background and personal characteristics, should inform this Court with respect to the following issues to be considered pursuant to Sec. 3553(a):

      1.   Nature and circumstances of the offense and the history and <u>personal characteristics of the defendant</u>.

a.  The Nature and Circumstances of the Offense.

For the most part, the events of the day on January 6 are not in dispute and need not be recounted here.  As Judges in this District have recognized after studying the events of January 6 in great detail, the crowd at the Capitol that day can be generally categorized as having three primary constituent parts:

1) A relatively small group of individuals who came to the Capitol for the purpose and with the intent to engage in violence with the goal of disrupting the Congress's certification of the 2020 Electoral Vote.

2) A larger number of protesters who intended to protest in a loud and raucous manner as a manifestation of their unhappiness and distrust with regard to the outcome of the election -- but with no predetermined intention of engaging in violence – some of whom were drawn into committing acts of violence once there; and

3) an even larger group who remained as spectators to what developed into a riot by members of the first two groups.  Some members of this third group entered the Capitol building, walked around, and then exited without incident.  Mr. Tuck's is squarely within this third group.

Defendant Kevin Tuck and his son, Nathaniel Tuck, traveled from central Florida to Washington, D.C., together with friends and co-defendants Arthur Jackman and Joe Biggs. The group stayed together in a rental unit on the evening of January 5, 2021, as part of a shared trip to attend the January 6 events.

On the morning of January 6, the Tucks joined Jackman and Biggs to visit the National Mall and later met a larger group of Proud Boys members near the Washington Monument.

Throughout the march, Mr. Tuck remained part of the larger group but did not actively lead or engage in any antagonistic behavior. While some members of the group expressed frustrations and criticisms toward law enforcement, with a few engaging in acts of violence and property destruction, Mr. Tuck was not involved in any such conduct.

At approximately 12:53 p.m., as the crowd moved toward the Capitol, a surge by individuals at the front led to the breach of barricades. Defendant Kevin Tuck advanced with the flow of the crowd onto Capitol grounds, but there is no evidence he acted aggressively or incited others to breach police lines. His presence on Capitol grounds reflected the chaotic movement of the crowd rather than deliberate action to enter restricted areas.

Mr. Tuck remained on the West Plaza observing the events around him and did not participate in violent acts against law enforcement. As rioters forced their way up scaffolding, Tuck stayed back. He later moved around the north side of the building to the east side of the Capitol. He avoided any involvement in the direct confrontation between rioters and law enforcement at the West Plaza prior to doing so.

Although Mr. Tuck entered the Capitol building briefly around 2:40 p.m. through the ceremonial Columbus Doors at the top of the center staircase, this happened as a result of the movement of hundreds of members of the crowd all

in that one direction.  Given his physical position, moving forward into the building was his only option.

Once inside the building, Mr. Tuck remained calm and moved in a peaceful manner along with others inside.  He remained for only a brief period of time before exiting.  He engaged in no acts of violence, no confrontations with law enforcement and did not engage in any acts of vandalism or theft inside the Capitol.

Mr. Tuck's behavior on January 6 reflects a complex mix of circumstances and crowd dynamics, rather than deliberate intent to cause harm or disrupt governmental functions. His prior record and character references underscore a history of law-abiding and community-oriented conduct.

b. <u>History and Personal Characteristics</u>.

Kevin Tuck was born on October 11, 1969, in Chicago, Illinois, to Juanita Kopp and Reginald Tuck.  Mr. Tuck never knew his biological father but was raised in a loving and supportive household by his mother and stepfather Herald Kopp.  Mr. Tuck grew up with two brothers.

Mr. Tuck recalls his upbringing in Chicago with warmth, describing it as a good life despite the family's modest means. He described himself, "I was an inner-city kid; we were poor but I didn't know we were poor, and we had a good life."

Mr. Tuck's family includes two siblings: Caleb Kopp, who served in the United States Army and is now retired and residing in California, and Jonathan

Kopp, who also resides in California. The family's bond remains strong, as reflected in their shared histories and mutual support.

Mr. Tuck moved out of his parents' house at age 18. On July 14, 1990, he married his wife Maria, with whom he has maintained a long and stable marriage. Together, they have three children: Nathaniel Tuck, 32, Zenaida Tuck, 29, and Marisa Tuck, 28. Mrs. Tuck has dedicated herself to being a homemaker and is now a proud stay-at-home grandmother.

In 1996, Mr. Tuck relocated his family to Orlando, Florida, where they have lived since. His residential history reflects stability and dedication to providing a secure environment for his family, with homes in Cook County, Illinois; Casselberry, Florida; Gainesville, Georgia; and Apopka, Florida. He currently resides at a home he owns in Apopka, Florida, with his wife and daughter, Zenaida.

Mr. Tuck is known by his family and in his community as a person of integrity and community involvement. He has provided numerous character reference letters from law enforcement officers, past employers, and media outlets, which attest to his positive reputation and contributions to the community. These testimonials highlight his professionalism and strong moral character.

Mr. Tuck's life story reflects resilience, commitment to family, and strong community ties, reinforced by the positive support he has received from those who know him well.

> 2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to

> criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other <u>correctional treatment in the most effective manner</u>.

This Court, as a matter of justice and equity, should treat Mr. Tuck no different than other misdemeanant offenders convicted for their involvement in the events at the Capitol on January 6.

Mr. Tuck engaged in no acts of violence. He did not engage with any law enforcement officers, and he did not engage in any destruction of property. His offense conduct involves entering onto restricted ground, including going inside the Capitol building, without lawful authority to do so.

In *United States v. Horn*, 21-cr-301-TJK, this Court sentenced *Horn* to 12-months probation. Unlike Mr. Tuck, *Horn*, went to trial and was convicted by a jury of all four counts charged by the information. Mr. Tuck entered into a plea agreement and accepted responsibility for his actions, differing him from *Horn*. However, similarities stand as neither caused any damage to the Capitol nor engaged in any acts of violence towards the police.

This Court should also consider similar sentences by other Judges of this Court which have acknowledged that such sentences are appropriate in substantially similar cases where the defendant is a first-time violator and there are no aggravating factors in the defendant's conduct on January 6. *United States v. Wiesmar*, 21-cr-00592-1-ABJ, *United States v. Frankowski*, 21-cr-00592-2-ABJ, *United States v. Cronin*, 22-cr- 00233-ABJ. In each of those cases, the Government asked for a term of incarceration, but the Court determined that such a sentence was not warranted by the facts and that a

sentence of probation was sufficient to accomplish the Sec. 3553(a) policy goals.

The Defendants in *Wiesmar* and *Frankowski* are similar to Mr. Harshman, but each acted in ways that were more disruptive than Mr. Harshman inside the Capitol. They entered the Capitol building following the crowd just as Mr. Harshman, but then traveled to different locations while inside the building and spent more time inside. *Wiesemar* and *Frankowski* entered Senate offices and spent several minutes inside. Similar to Mr. Harshman, they caused no damage to the building nor engaged in any violence.

*Cronin* is also similarly situated to Mr. Harshman. He entered the building, met up with his codefendants and the group made its way towards the Senate. After being in the building for a short time, Cronin exited the building on the same route he entered. After entering Cronin spent some time traveling through the halls before exiting the building causing no damage nor engaging in violence.

Further, this Court should also recognize the sentence handed down by District Judge Mehta in *United States v. Greene*, 21-cr-00028-AMP. Defendant Greene went to trial, was acquitted of four felonies, but was found guilty by a jury on a Class "A" misdemeanor – he did not plead guilty and maintained his innocence even at sentencing. Nevertheless, Judge Mehta found it proper to sentence Greene to only two years of probation based on the totality of the evidence heard at trial.

DEFENDANT'S SENTENCING RECOMMENDATION

     Based on specific offense conduct here, and taking into consideration all the factors set forth by Congress in Section 3553(a), a sentence of 12 months of probation for Defendant Kevin Tuck's accomplishes the purposes of Section 3553(a) and is a sentence that adequately addresses the seriousness of the offense involved, and promotes future respect for and adherence to the law not only by them but by the public at large as well.

Dated: January 3, 2025       Respectfully submitted,

                                  /s/ William L. Shipley
                                  William L. Shipley, Jr., Esq.
                                  PO BOX 745
                                  Kailua, Hawaii 96734
                                  Tel: (808) 228-1341
                                  Email: 808Shipleylaw@gmail.com